UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN C. SINGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  1:14-cv-01850-RLY-TAB |
| | ) |
| CORRECTIONS CORPORATION OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On the evening of January 19, 2013, Kevin Singh fell from his top bunk at the Marion County Jail II (the "Jail") and sustained serious injuries. Singh brings a deliberate indifference claim pursuant to 42 U.S.C. § 1983 against Corrections Corporation of America ("CCA"), which operates the Jail, for its failure to provide Singh a lower bunk. CCA now moves for summary judgment on Singh's federal claim. For reasons set forth below, the court **GRANTS** the motion.

**I.      Standard**

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). If the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the court will enter summary judgment. Fed. R. Civ. P.

1

56(a). To survive the motion, the nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine dispute of fact exists if, based on the evidence presented, a reasonable jury could return a verdict in favor of the nonmoving party. *Id.* at 248. The court draws all reasonable inferences from the evidence in favor of the nonmoving party, but it need not draw unreasonable inferences. *Tindle v. Polte Home Corp.*, 607 F.3d 494, 496 (7th Cir. 2010).

## II.     Undisputed Facts

Singh entered the Jail on two separate occasions—first on December 5, 2012, and again on January 19, 2013. Upon his arrival for each detention, Singh underwent an initial health screening as part of the intake process. During an initial screening, the nurse makes objective observations of the inmate's health and elicits subjective responses regarding his current and past medical conditions. If the screening reveals certain medical conditions, such as drug or alcohol withdrawal symptoms, the Jail assigns the inmate a lower bunk. Otherwise, the Jail assigns bunks randomly based on availability at the time of the inmate's intake.

During Singh's December 5 initial screening, he informed the nurse that he was withdrawing from alcohol and suffering from tremors and nausea. Although Singh did not appear to the nurse to have such symptoms, she referred Singh to a nurse practitioner who conducted an "inmate health appraisal" that same day. Unlike the initial screening, which Jail staff administer at intake, the inmate health appraisal can be completed any time within fourteen days of the inmate's arrival at the Jail. The health appraisal

conducted on Singh confirmed the withdrawal symptoms he reported to the intake nurse. Pursuant to the Jail's policy, Singh received a bottom bunk pass ("BBP").

Singh's January 19 screening revealed no objective medical conditions. He exhibited no symptoms of drug or alcohol withdrawal and reported having no special health care needs or concerns that required attention. As far as existing conditions, Singh reported only that he suffers from bulging herniated discs in his back. Because he neither reported nor exhibited any medical conditions, Singh did not undergo an inmate health appraisal, as he did on December 5, and he was randomly assigned a top bunk.

Once Singh received his bunk assignment, he explained to a correctional officer that he required a BBP for his own safety, and that someone at "medical intake" told him that he had a BBP. The officer instructed Singh to take the bunk assigned because it was after midnight and any changes would need to wait until later that morning. This confrontation apparently escalated, as Singh reports that the officer threatened to send him to segregation if he refused to comply with the order. Singh ultimately took the top bunk as assigned. At some point on the morning of January 20, Singh fell out of his bunk and sustained a broken collarbone, bruising, a concussion and a head laceration, and "brain bleed." Singh was transported to Wishard Hospital for treatment and returned to the Jail the next day.

### III. Discussion

Singh brings his claim against CCA pursuant to 42 U.S.C. § 1983. Section 1983 provides "a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). Singh claims that CCA's failure to provide

him with a bottom bunk amounts to deliberate indifference in violation of his due process rights under the Fourteenth Amendment.[1]  To show deliberate indifference, Singh must establish (1) that he had an objectively serious medical condition and (2) that Jail staff were deliberately indifferent to that condition.  *See Rodriquez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009).  Mere negligence in attending to the health care needs of detainees does not rise to a constitutional violation.  *Id.*

To satisfy the first prong, Singh cites to a document produced from a database maintained by the Marion County Sheriff's Department—not CCA.  The document contains a notation, entered at 2:54 a.m. on January 19, that reads "Lower Bed Alert [Per Medical]."  (Filing No. 27-6).  Singh argues that the lower bed alert suffices to show that he suffered from an objectively serious medical condition on January 19.  In other words, because medical personnel in the Sheriff's Department determined that he needed a lower bunk, he had an objectively serious medical condition.  An objectively serious medical condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention."  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  A notation for a lower bed alert, without so much as identifying an ailment, does not suffice.

---

[1] In fact, Singh alleges a violation of his Eighth Amendment right against cruel and unusual punishment.  As a pretrial detainee, Singh had not been formally adjudicated and thus not sentenced to punishment.  His claim therefore arises under the Fourteenth Amendment.  The court ignores this common mistake, as "deliberate indifference is the recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the Eighth and Fourteenth Amendments respectively." *Palmer v. Marion Cty.*, 327 F.3d 588, 593 (7th Cir. 2003).

Even if Singh established an objectively serious medical condition, he does not attempt to show that CCA had knowledge of it. The plaintiff must show an "intentional[ ] disregard [to] the known risk to inmate health or safety." *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). Singh does not dispute that he had no objective medical conditions during his initial screening on January 19; nor does he dispute that he reported no subjective health concerns. Thus, even if he established CCA's awareness of the lower bed alert, failing to provide him a lower bunk does not rise to the level of deliberate indifference.

Furthermore, Singh must connect the purported constitutional violation to a policy or custom of CCA to recover. A corporation that provides an essential government service—in this case, administering a detention center—can be held liable under § 1983, but not on a theory of *respondeat superior*. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Like a municipality, "a private corporation can be liable if the injury alleged is the result of a policy or practice, or liability can be demonstrated indirectly by showing a series of bad acts" to support an inference that those with policy-making authority "encouraged or at least condoned the misconduct of subordinate officers." *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) (quoting *Woodward v. Corr. Med. Servs.*, 368 F.3d 917, 927 (7th Cir. 2004)) (internal quotation marks and alterations omitted). Singh does not point to other instances of CCA failing to provide bottom bunks to detainees with health conditions; thus, he must show a practice or policy of CCA that violated his constitutional rights. *See Shields*, 746 F.3d at 796 (finding that "isolated

5

incidents do not add up to a pattern of behavior that would support an inference of a custom or policy").

Singh points to CCA's practice of not administering "inmate health appraisals" immediately when an inmate arrives to the Jail, and claims such a reckless policy supports an inference of deliberate indifference. Singh relies on *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003). In that case, an inmate challenged a correctional facility's lack of an established policy to address the immediate medication needs of inmates with serious medical conditions. *Id.* at 578. The plaintiff-inmate, an insulin-dependent diabetic, suffered a stroke when his custodians failed to timely administer his insulin. *Id.* The Third Circuit reversed summary judgment for the facility, finding that a reasonable jury could conclude that the failure to establish such a policy creates a sufficiently obvious risk so as to constitute deliberate indifference to inmates' medical needs. The glaring distinction between *Natale* and this case is Singh's failure to show that he suffered from an objectively serious medical condition on January 19, 2013. For this reason, the court need not proceed further.

**IV. Conclusion**

For the foregoing reasons, the court **GRANTS** CCA's Motion for Summary Judgment on Plaintiff's Deliberate Indifference Claim (Filing No. 24).

**SO ORDERED** this 30th day of September 2016.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.